UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| CYNTHIA  BUNCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 3:15-cv-00150-RLY-MPB |
| | ) | |
| CAROLYN W. COLVIN Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed.
R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No.
21). Plaintiff Cynthia Bunch seeks judicial review of the Social Security Administration's final
decision deeming her ineligible for Supplemental Security Income. The matter is fully briefed.
(Docket No. 16; Docket No. 19; Docket No. 20.) It is recommended that the District Judge
**REMAND** the decision of the Commissioner of the Social Security Administration finding that
Plaintiff Cynthia Bunch is not disabled, pursuant to sentence four of 42 U.S.C. § 405(g) for
further consideration, consistent with this opinion.

**Introduction**

Ms. Bunch filed an application for Supplemental Security Income disability benefits
under Title XVI of the Social Security Act on December 28, 2011, alleging that she became
disabled on April 28, 2008. Her claim was denied initially and upon reconsideration. At Ms.

Bunch's request, a hearing was held on October 17, 2013, before Administrative Law Judge (ALJ) Sara A. Gillis, where Ms. Bunch and Stephen Schmidt, a vocational expert, appeared and testified. On October 18, 2013, Ms. Bunch submitted additional medical records. On December 6, 2013, the ALJ issued a decision concluding that Ms. Bunch was not disabled. Ms. Bunch requested a review of the ALJ's decision by the Appeals Council and also included new evidence for the Appeals Council's consideration. The Appeals Council denied review on September 1, 2015, thereby making the ALJ's decision the final decision of the Social Security Commissioner. 20 C.F.R. § 404.981; *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). On November 2, 2015, Ms. Bunch timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Plaintiff is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in

combination, are severe. If they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and her RFC. If so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

**Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. This Court must affirm the ALJ's decision unless it lacks the support of substantial evidence or rests upon a legal error. *See, e.g.*, *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. § 405(g). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ—not the Court—holds discretion to weigh evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility. *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971). Accordingly, the Court may not re-evaluate facts, reweigh evidence, or substitute its judgment for the ALJ's. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made. The ALJ must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

**Analysis**

## I.    The ALJ's Sequential Findings

The ALJ found that Bunch had not engaged in substantial gainful activity since December 28, 2011, the date of Plaintiff's application—therefore, the ALJ proceeded to step two of the analysis. (Docket No. 13-2 at ECF p. 15).

At step two, the ALJ determined that Bunch had severe impairments of lumbar disc disease, mood disorder, anxiety disorder, and bipolar disorder. *Id. See* 20 C.F.R. § 416.920(c). The ALJ also determined that Bunch had the following non-severe impairments: COPD/asthma and an inoperable aneurysm at the back of her head. (Docket No. 13-2 at ECF p. 16).

At step three, the ALJ found that Bunch's combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R § 404, subpart P, Appendix 1. (Docket No. 13-2 at ECF p. 16). The ALJ considered relevant musculoskeletal listings including, Listing 1.04 (entitled Disorders of the spine) and Listing 1.02 (entitled Major dysfunction of a joint(s) (due to any cause)). (Docket No. 13-2 at ECF p. 16). Further, the ALJ considered Bunch's mental impairments, singly and in combination, pursuant to the criteria of Listing 12.04, 12.06, and 12.09, specifically whether the "paragraph B" criteria were satisfied. (Docket No. 13-2 at ECF p. 16). The ALJ noted that Bunch did not meet the "paragraph B" criteria because she did not have at least two of the following: marked restrictions of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *Id.* Instead, the ALJ concluded that the evidence showed Bunch's activities of daily living show no restriction; social functioning show no more than mild difficulties; concentration, persistence, or pace no more than moderate difficulties; and no records documenting any extended episodes of decompensation. (Docket No. 13-2 at ECF p. 17).

Prior to Step four, the ALJ determined that Bunch had the RFC to perform light work with the following limitations:

> [L]imited to occasional climbing of ladders/ropes/scaffolds, frequent climbing of ramps/stairs, frequent stooping, kneeling, crouching, crawling and balance. The claimant is able to perform simple routine one-two step tasks with occasional public contact.

(Docket No. 13-2 at ECF p. 17).

The ALJ concluded that Bunch could not perform any past work, consistent with the vocational expert's (VE) opinion. (Docket No. 13-2 at ECF p. 20). Bunch had worked as a hand packer, server, and sales clerk. (Docket No. 13-2 at ECF p. 20). Bunch was classified as an individual closely approaching advanced age, at the age of 49 on the alleged disability onset date, with a limited education and an ability to communicate in English. (Docket No. 13-2 at ECF p. 21).

The ALJ found that there were a significant number of jobs in the economy that Plaintiff could still perform. Based on the testimony of the VE and, considering the claimant's age, education, work experience, and RFC, the ALJ concluded she would still be able to perform the jobs of cleaner, cafeteria attendant, and electronics worker. (Docket No. 13-2 at ECF pp. 21-22).

II.  **Review of Plaintiff's Assertions of Error**

  A.  **Substantial Evidence Supports the ALJ's Analysis of Cynthia Bunch's Mental Impairments.**

Bunch asserts that the ALJ's decision does not adequately address Bunch's mental restrictions that are supported by the totality of the evidence. (Docket No. 16 at ECF p. 16). Bunch specifically argues three areas the ALJ failed to consider: (1) her social functioning and (2) her inability to maintain concentration, persistence, and pace when completing the paragraph "B" criteria analysis at Step 3 and (3) the extent of her ability to perform regular and continuing work because the ALJ did not address Bunch's inability to handle stress in a work environment. (Docket No. 16 at ECF pp. 17-25).

The Court will address each of Bunch's three arguments within this issue in turn. First, Bunch asserts that the ALJ failed to consider evidence when assessing Bunch's social

functioning and, therefore, the ALJ's basis for a "mild" finding is unsupported. (Docket No. 19 at ECF p. 20). As a result, Bunch asserts that the ALJ's corresponding RFC, which limited Plaintiff to "occasional public contact" is also insufficient. *Id.* As a part of the ALJ's analysis of the "paragraph B criteria" she determined that Bunch had no more than mild difficulties in maintaining social functioning. (Docket No. 13-2 at ECF p. 17). In reaching this conclusion, the ALJ recognized that Bunch testified as to having difficulty getting along with others, however she indicated in her functional report that she was living with friends, spent time with family and socialized with her friends. *Id.* (citing Docket No. 13-6 at ECF pp. 39-49).

The regulations require the use of this "paragraph B criteria" to assess mental impairments at steps two and three of the sequential inquiry, whereby ratings are assigned in four functional areas—activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 416.920a(c)(3). The degree of limitation in the first three areas is rated on a "five-point scale: none, mild, moderate, marked and extreme," and "[t]he degree of limitation for episodes of decompensation is rated on a four-point scale." 20 C.F.R. § 416.920a(c)(4). If the claimant's degree of limitation is rated "in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area," then the mental impairment is typically found not severe. *Id.* § 416.920a(d)(1). If the Plaintiff's mental impairment is severe, the agency will determine whether it meets or medically equals a listed impairment. *Id.* And, if the claimant's severe mental impairments do not satisfy a listing, the agency then assesses the claimant's residual functional capacity. *Id.* § 416.920a(d)(3).

The second functional area, social functioning, "refers to [the claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." 20 C.F.R. Par 404, Subpart P, Appendix 1, Section 12.00(C)(2). Here, the ALJ

found Bunch had no more than mild difficulties in maintaining social functioning, citing Bunch's Function report, in which she indicated she was living with friends, spent time with family and socialized with friends. (Docket No. 13-6 at ECF pp. 39-46).

Bunch argues that the ALJ overlooked evidence that would have resulted in at least a marked limitation in her social functioning. This evidence included testimony that Bunch moved away from family due to conflict and self-reports that she only interacts socially when her back does not hurt. (Docket No. 16 at ECF pp. 17-18). Bunch also criticizes the ALJ's opinion for failing to note her testimony and reports to providers that she has trouble dealing with people, difficulty controlling her "nerves," and the only third-party function report was completed by someone that had spent little time with her. (Docket No. 16 at ECF p. 18). She also cites medical evidence that she alleges the ALJ erred in overlooking, such as a psychosocial assessment at River Valley Behavioral Health and the objective findings of Drs. Bowerman and Bachman, specifically Dr. Bowerman's opinion that Bunch was moderately to markedly impaired in her ability: (1) to respond appropriately to co-workers and supervisors, and the public; and (2) to interact with others in a socially acceptable way. (Docket No. 16 at ECF p. 19). Finally, Ms. Bunch cites GAF scores assigned by multiple providers that she alleges the ALJ erred by ignoring.

As we noted above, the ALJ's determination of Hick's social functioning limitations was limited to one paragraph. (Docket No. 13-2 at ECF p. 17). However, the ALJ cited evidence that allowed him to logically conclude that Bunch had no more than mild difficulties maintaining social functioning, specifically her testimony that she had difficulty getting along with others compared against her function report that indicated she was living with friends, spent time with family and socialized with friends. *Id.*

8

Moreover, the ALJ discussed Bunch's social functioning in more detail, including discussing objective medical evidence and the weight he provided to different providers directly after step three when he determined Bunch's Residual Functional Capacity. (Docket No. 13-2 at ECF pp. 17-20). This discussion provides sufficient detail to sincerely review the ALJ's "paragraph B" analysis. On review, the Court does not discount a portion of the ALJ's rationale merely because it appears elsewhere in the decision. *Curvin v. Colvin*, 778 F.3d 645 (7th Cir. 2015) (citing, *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5) (7th Cir. 2004)) ("To require the ALJ to repeat such a discussion throughout his decision would be redundant."); *see also Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985) ("[W]e examine the [ALJ]'s opinion as a whole to ascertain whether he considered all of the relevant evidence, made the required determinations, and gave supporting reasons for his decisions.").

Regarding the GAF scores, the Seventh Circuit has held that because a "GAF rating always reflects the worse of the [severity of symptoms *and* functional level], "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Wilkins v. Barnhart*, 69 Fed. Appx. 775, 780 (7th Cir. 2003) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). Instead of relying on an unexplained numerical score, the ALJ's ultimate finding in this case as to Bunch's social functioning, and as analyzed below her concentration, persistence, and pace, are substantially supported by the record. See *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

Considering the ALJ's opinion as a whole, it is evident the ALJ built a logical bridge between the evidence and her conclusion. She addresses a number of treatment notes in coming to this conclusion, including notes that show Bunch has demonstrated normal mental status examinations. (Docket No. 13-2 at ECF pp. 19-20). These notes included the psychosocial

assessment at River Valley Behavioral Health and Dr. Bowerman's assessments. The ALJ explains she only assigned "some weight" to Dr. Bowerman's consultative evaluation because some of the functioning ranges Dr. Bowerman provided were partially due to dementia, though the remainder of the records did not support the conclusion. (Docket No. 13-2 at ECF p. 20).

Considering the ALJ's opinion as a whole, it is evident the ALJ articulated the requisite justification for her findings as to Ms. Bunch's social functioning and this Court determines that those findings are supported by substantial evidence. *Scheck*, 357 F.3d at 700.

Second, Bunch argues that, like social functioning, the ALJ failed to properly assess the "paragraph B" third functional area; the ability to maintain concentration, persistence, or pace. (Docket No. 16 at ECF p. 21).

Concentration, persistence or pace, "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Par 404, Subpart P, Appendix 1, Section 12.00(C)(3). Here, the ALJ found Bunch had no more than moderate difficulties in maintaining concentration, persistence, or pace. (Docket No. 13-2 at ECF p. 17). In support, the ALJ cited Bunch's testimony that she has a poor memory and Drs. Bowerman and Bachman's 2012 reports, which found Bunch gave a poor effort with memory testing, yet her attention and concentration was fair and her April 2012 mental status examination normal. *Id.* (citing Docket No. 13-7 at ECF pp. 34, 50).

Bunch again argues that the ALJ overlooked evidence in relying on the findings from Drs. Bowerman and Bachman's reports. (Docket No. 16 at ECF p. 21). She cites evidence that she argues ALJ failed to consider, including Dr. Bowerman's report that Plaintiff's (1) insight was fair; (2) judgement was poor; (3) memory was markedly impaired; (4) thought process was

tangential; and (5) Dr. Bowerman recommended further testing. (Docket No. 16 at ECF p. 22). She also cites evidence in Dr. Bachman's report that she believes contradicts the ALJ's finding that she had no more than moderate difficulties in maintaining concentration, persistence, or pace, as well as provider reports that she has low frustration tolerance and that medications cause sleepiness, drowsiness, and confusion. (Docket No. 16 at ECF pp. 23-24).

Here, the line of evidence cited by Bunch was not ignored by the ALJ and, moreover, it adds further support to the ALJ's conclusion that her concentration, persistence or pace is moderately impaired. For instance, Dr. Bowerman's opinion was that Plaintiff was moderately impaired in her ability to maintain concentration, attention, and for pacing, tracking, and scanning, and in her ability to respond appropriately to usual work situations (attendance, safety, etc.), and was mildly to moderately impaired in her ability to deal with changes in a routine work setting. (Docket No. 13-7 at ECF p. 36). This directly aligns with the ALJ's decision that Bunch was no more than moderately impaired, as neither Dr. Bowerman nor the ALJ found Bunch to have any more than moderate impairment in these areas. The ALJ notes she accepted Dr. Bowerman's moderate limitations of functioning. (Docket No. 13-2 at ECF p. 20). Finally, Bunch's brief exaggerates her actual testimony before the ALJ, where she in fact states that it caused "some" sleepiness, drowsiness, and confusion, but "not real bad," thereby making it reasonable to conclude that this evidence supports a finding that concentration, persistence or pace is moderately impaired (Docket No. 13-2 at ECF p. 48).

Again, like the social functioning analysis, considering the ALJ's opinion as a whole, it is evident the ALJ outlined the requisite, minimal justification for her findings as to Ms. Bunch's concentration, persistence, and pace. This Court determines that those findings are supported by substantial evidence. *Scheck*, 357 F.3d at 700.

Bunch's third sub-issue is that the ALJ failed to consider her ability to handle stress in a work environment. (Docket No. 16 at ECF p. 25). Bunch cites SSR 85-15, which discusses mental illness triggers in the workplace, and concludes that the preponderance of the evidence shows Plaintiff has a substantial loss of ability to perform mental work-related tasks due to stress and low tolerance. *Id.* The Court disagrees, as the ALJ discusses Bunch's potential limitations to perform mental work-related tasks in several instances throughout her opinion. She acknowledged that Bunch had testified "having difficulty with memory and working with others;" (Docket No. 13-2 at ECF p. 18) that Dr. Bowerman found that due to "her psychiatric impairments her ability to understand, remember, and carry out simple one or two-step job instructions is only minimally impaired;" (Docket No. 13-2 at ECF p. 19) and that Dr. Bowerman also found that "[h]er ability to respond appropriately to co-workers and supervisors, and the public is moderately to markedly impaired because of her mood, anxiety, and amnestic disorders" (Docket No. 13-2 at ECF pp. 19-20). This is just some of the evidence that the ALJ considered in assessing Plaintiff's ability to handle stress in a work environment. The ALJ built a rational bridge between this evidence and her RFC findings. She noted that she accepted the moderate limitations of functioning noted by Dr. Bowerman, and indeed, these limitations were noted in the final RFC that indicated light duty, with additional limitations of one-two step tasks and occasional public contact. (Docket No. 13-2 at ECF p. 17).

In sum, substantial evidence supports the ALJ's analysis of Bunch's mental impairments.

**B. Substantial Evidence does not Support the ALJ's RFC Determination as she Erred by Relying on Outdated Non-Examining Physician Reports**

Next, Bunch asserts that the ALJ's finding, within her RFC determination, that Bunch could perform light work was not supported by substantial evidence because: (1) she relied on state agency physicians, but these physicians never reviewed later, contradictory evidence, which

the ALJ erred by reviewing herself substituting her judgment for that of a medical witness and (2) that she overlooked evidence that conflicted her RFC findings. (Docket No. 16 at ECF p. 25). Instead, Bunch posits she may only be capable of sedentary work—which given her age, education, and lack of transferable skills, would lead her to be disabled via Medical Vocational Guideline Rule 201.10 (Docket No. 16 at ECF p. 29).

Bunch critiques the ALJ's reliance on state agency physician opinions because these physicians did not review 2013 x-rays of the lumbar spine, which showed moderate degenerative disc disease at the L3-4 level and moderate to severe disc and facet degenerative disease at the L5-S1 level. (Docket No. 13-9 at ECF p. 30). Further, the physicians did not review a lumbar spine MRI that showed significant abnormalities. (Docket No. 13-8 at ECF p. 35; Docket No 13-9 at ECF pp. 9-10). Moreover, Bunch argues that the ALJ erred by analyzing these records herself, substituting her own judgment for that of a medical witness.

Once a non-examining physician's opinion is outdated due to new, significant, and potentially decisive evidence, it is an error to continue to rely on the earlier opinion. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *see also Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000) ("Fatally, the administrative law judge failed to submit that MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence").

Here, the ALJ gave significant weight to the opinions of three doctors who opined that Plaintiff was capable of performing a range of light work—Drs. Acinas, Tambellini, and Pathak. (Docket No. 13-3 at ECF pp. 10-11; Docket No. 13-3 at ECF p. 27). The ALJ stated that he gave significant weight to the opinions of these doctors because they were consistent with Bunch's treatment notes. (Docket No. 13-2 at ECF p. 20). However, none of these non-examining physicians had access to the aforementioned 2013 exams as they were conducted before their

examinations of Bunch. Given the new, significant medical evidence was not considered by any of the physicians that the ALJ relied on, that there do not appear to be early, similar diagnostic tests that the physicians could have relied on instead, and that there was evidence in the record that Bunch's back condition worsened in the period after the non-examining physician's opinions were issued and the MRI was conducted,[1] the ALJ erred by continuing to rely on their outdated assessments.

The Government justifies the ALJ's reliance by reminding the Court it is the ALJ's duty to resolve conflicting medical evidence she is faced with. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). This is true. However, there is a distinction between resolving conflicting medical evidence and making independent medical findings regarding whether certain activities are inconsistent with a particular medical diagnosis. The Seventh Circuit has held the latter is an erroneous exercise for the ALJ. *Rohan v. Chater*, 98 F.3d 966, 970-71 (7th Cir. 1996). In this instance, the ALJ erred by evaluating herself the significance of the radiographs and lumbar spine examinations. *See Stage*, 812 F.3d at 1125.

Bunch also argues that substantial evidence does not support the ALJ's physical residual functional capacity assessment because she never considered whether Plaintiff's weight was a contributing factor. (Docket No. 16 at ECF p. 28). Bunch cites SSR 02-1p, which indicates an ALJ is required to consider the effects of obesity together with the underlying impairments throughout all aspects of the decision, even if the individual does not claim obesity as an impairment. SSR 02-1p.

---

[1] On 5/3/2013, shortly before the additional diagnostics were conducted, Bunch reported her back pain had been getting worse during the last 8-10 months. (Docket No. 13-9 at ECF p. 41). At her next visit with Dr. Talwar, on 5/16/2013, it was indicated that an MRI was scheduled for 5/20/16 (Docket No. 13-9 at ECF p. 38). This adds support that the new radiographs and MRI are significant.

Here, the record contains two isolated BMI scores indicting obesity, 30.02 and 30.20. (Docket No. 16 at ECF p. 28). However, there are several instances where her BMI was below 30. (Docket No. 13-7 at ECF p. 58; Docket No. 13-9 at ECF p. 33; Docket No. 13-9 at ECF p. 35; Docket No. 13-9 at ECF p. 41). Moreover, despite those two BMIs above 30 no doctor diagnosed her with obesity.

The Court disagrees with Bunch's reading of SSR 02-1p. The ruling provides that in making the determination of whether obesity is a medically determinable impairment, at Step 2, if evidence in a case does not include a diagnosis of obesity, but includes medical records showing a consistently high BMI, the ALJ "may ask a medical source to clarify whether the individual has obesity. However, in most such cases we will use our judgment to establish the presence of obesity based on the medical findings and other evidence in the case record." SSR 02-1p. Therefore, it is at the discretion of the ALJ's judgment to determine whether obesity is a medically determinable impairment and SSR 02-1p does not explicitly require the ALJ to make that part of his Step 2 findings. Nonetheless, given this Court is recommending remand due to the above analysis, the ALJ is encouraged to clarify her judgment at Step 2 regarding whether obesity is a medically determinable impairment.

### C.  The ALJ's Subjective Symptom Evaluation was not Patently Wrong.

The third issue Bunch raises is that the ALJ's credibility assessment of her was patently wrong. (Docket No. 16 at ECF p. 29). Specifically, Bunch argues that the ALJ mischaracterizes evidence and then attempts to use it as a basis for support. *Id.*

This Court gives an ALJ's subjective symptom evaluation special deference and reverses only if it is patently wrong, because the ALJ observed the claimant's testimony at the hearing. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). An ALJ need not discredit a claimant's

individual statements; instead, the ALJ need only minimally articulate the evidence that prompted her to generally distrust the claimant's account of her limitations. *See Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012) ("an ALJ's credibility findings need not specify which statements were not credible"); *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992) (ALJ must only "minimally articulate reasons for crediting or rejecting evidence of disability"). If "the determination rests on objective factors or fundamental implausibilities rather than subjective considerations" like demeanor this Court has more freedom on review. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). In making a credibility finding the ALJ must evaluate the claimant's pain level, medication, treatment, daily activities, and limitations. *See* 20 C.F.R. § 404.1529(c); *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

Here, the ALJ found that Bunch's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible because they were inconsistent with clinical indications that show that the claimant's condition is generally well controlled and because "the veracity of the claimant's testimony is suspect." (Docket No. 13-2 at ECF pp. 18-19). The ALJ pointed to contradictions between the record and testimony, which included records indicating the claimant moved to California to take care of her mother and alcoholic boyfriend, but denied that she lived with anyone at the hearing; records indicating excessive alcohol use, but denied she had ever had problems with excessive alcohol use at the hearing; and inconsistency between Bunch's testimony regarding her symptoms/abilities compared to the medical evidence in the record. (Docket No 13-2 at ECF p. 19).

Bunch argues that the ALJ misconstrued portions of her testimony that resulted in a patently wrong credibility determination. Bunch critiques the ALJ's conclusion that her testimony regarding care for her mother was untruthful and contradicted by the record. (Docket

No. 16 at ECF p. 30). The ALJ noted that Bunch indicated she had moved to California to take

care of her mother and alcoholic boyfriend. (Docket No. 13-2 at ECF p. 19).The ALJ also noted

that her treatment records described her as the caretaker for three people. *Id.* A comparison of a

claimant's activities to her asserted limitations is a valid basis upon which an ALJ may conclude

a claimant has exaggerated the effects of her impairment. *See Pepper v. Colvin*, 712 F.3d 351,

368-69 (7th Cir. 2013). The ALJ considered these activities as a factor in discounting Bunch's

allegations regarding her capabilities, but did not equate them to her ability to work a full-time

job. *See Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007) (considering the claimant's

performance of daily activities as a factor when discounting claimant's credibility).

      Moreover, contrary to Bunch's assertions, the ALJ reasonably interpreted Bunch's

testimony at the hearing. The ALJ asked Bunch three times whether she cared for her mother.

First, the ALJ said, "And I read that you came out here to care for your mom. Are you care

giving for your mother right now?" (Docket No. 13-2 at ECF p. 32). Bunch responded that her

mother passed away. *Id.* The ALJ then asked, "were you care giving for her before," to which

Bunch responded, "*No*, they had hospice." *Id.* Finally, the ALJ asked "what about before

hospice," to which Bunch responded "[i]t was home health and then we got a cab to Dr. Koble,

her doctor, the Dollar Ride." *Id.* The ALJ was in the best position to interpret this testimony, and

reasonably found that it was inconsistent with Bunch's prior reports that she was the caretaker

for her mother and boyfriend. *See Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) ("A

credibility assessment is afforded special deference because the ALJ is in the best position to see

and hear the witness and determine credibility.").

      Bunch also criticizes the ALJ's assessment of her credibility regarding alcohol and drug

use. (Docket No. 16 at ECF p. 30). The ALJ found Bunch's statements were inconsistent

regarding her use of drugs and alcohol, which undermined Bunch's subjective complaints. (Docket No. 13-2 at ECF p. 19). The ALJ considered Bunch's testimony that she never had a problem with alcohol: "I used to drink occasionally. I mean, it was social drinking." (Docket No. 13-2 at ECF p. 19, citing Docket No. 13-2 at ECF p. 51). However, the ALJ contrasted this testimony to a progress note from April 2012, which indicated that Plaintiff frequently used alcohol and benzodiazepines. (Docket No. 13-2 at ECF p. 19, citing Docket No. 13-7 at ECF p. 49). This Court notes Bunch's critique as to whether the use of "frequent" in the medical records was inconsistent with her testimony that she used to drink "occasionally," but given the other instances in the record that provide insight of frequency—the Court does not find the ALJ's findings to be patently wrong. This includes reports that she drank two to three vodka drinks per day. (Docket No. 13-9 at ECF p. 38).

The Court further disagrees with Bunch's critique that the ALJ misinterpreted testimony regarding Bunch's social relationships. The ALJ's credibility determination included the observation that Bunch reportedly purchased Norco from a friend (Docket No. 13-9 at ECF p. 40), "but at the hearing she indicated that she did not know anyone here." (Docket No. 13-2 at ECF p. 19). At the hearing, Bunch did say at one point they she has "Just a couple of friends I talk to in the complex, but no close friends, no." (Docket No. 13-2 at ECF p. 45). However, just prior to that Bunch indicated she was unable to pay rent and if she did not find a way to pay rent she would "be homeless because [she] has no one out here." *Id.* The ALJ is in the best position to weigh these contradictory statements against each other and to determine the impact they have on Bunch's credibility—the Court does not find them patently wrong.

In sum, the ALJ considered the appropriate factors and explained her reasoning with citations to the record. The ALJ explained several reasons for her assessment of Plaintiff's

symptoms, including Plaintiff's complaints of pain, the inconsistency of Plaintiff's allegations

with the medical evidence, Plaintiff's daily activities—including acting as a caretaker for people,

Plaintiff's inconsistent statements, and the medical opinion evidence. (Docket No. 13-2 at ECF

pp. 18-20). The Court finds that the ALJ's subjective symptom analysis was not patently wrong.

*Jones*, 623 F.3d 1160.

### D. The Vocational Expert Testimony was Inconsistent with the *Dictionary of Occupational Titles* as the DOT Reasoning Levels for *Electronics Worker and Cafeteria Attendant* Exceed the ALJ's one- to two-step limitation in her RFC

Next, Bunch argues that the mental work demands of electronics worker and cafeteria

attendant exceed the ALJ's RFC determination. (Docket No. 16 at ECF p. 32). Specifically,

Bunch argues that the VE's testimony that these jobs are simple, one to two-step job instructions

is inconsistent with DOT because the jobs of *Electronics Worker and Cafeteria Attendant* are

identified in the DOT as Reasoning Level 2, which involve applying common sense to carry out

detailed but uncomplicated instructions and dealing with problems involving a few variables. *Id.*

Bunch argues that one to two-step jobs only align with DOT's Level 1 definition. *Id.*

The Court agrees with Bunch that there is a conflict between the ALJ's RFC and the

VE's testimony that Bunch could perform level two jobs. An individual performing a job that has

a reasoning level of two must be able to "(a)pply commonsense understanding to carry out

detailed but uninvolved written or oral instructions." *Dictionary of Occupational Titles, Appendix C, Components of the Definitional Trailer*, 1991 WL 688702. The DOT states that jobs

that involve one-to-two step tasks have a reasoning of level one. *Dictionary of Occupational Titles, Appendix C—Components of the Definitional Trailer*, 1991 WL 688702. Like in *Macek v. Colvin*, where the ALJ limited the claimant to one- or two-step instructions, but then concluded

that the claimant could perform a level two job, the conflict between those two findings

constitutes a reversible error. No. 2:12-cv-197-APR, 2013 WL 5436924 at *15 (N.D. Ind. Sept. 27, 2013). There is a direct conflict between the VE's testimony and the DOT, and the ALJ must reconsider whether there are jobs Bunch is capable of performing that fall into the level one range for reasoning development due to her limitation to simple one-to-two step routine tasks. *See id.*

The Court agrees with the Commissioner that, unlike *Macek*, the VE here included *Cleaner*, a job classified as a level one reasoning job. (Docket No. 19 at ECF p. 29). Remand for further explanation is not necessary if it can be predicted with great confidence that the result on remand will be the same. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). However, as discussed above this case is recommended for remand on other grounds and, therefore, it is appropriate to recommend further explanation of jobs appropriate for the ALJ's RFC determination, given the noted inconsistencies between the ALJ's RFC and the VE's testimony.

The Commissioner suggests that Bunch has waived this argument by not challenging the vocation expert's testimony providing Level 2 job titles for a hypothetical that included a limitation of one- or two-step job instructions. While a represented claimant who fails to raise any issues she has with a hypothetical during cross-examination of the VE generally waives that issue, that proposition does not wholly apply here. *See Juarez v. Astrue*, No. 1:09-CV-4021-SEC, 2010 WL 1580200, at *11 (N.D. Ill. 2010). Here, the issue is the proposed jobs' reasoning level classifications, which were not discussed by the VE, ALJ, or Bunch's attorney during the hearing and these classifications may not have been readily determinable by the attorney during the VE's questioning.

**E.  The Appeals Council Did Not Reasonably Denied Plaintiff's Request for Review as the Additional Evidence was Both New and Material.**

Finally, Bunch argues that the ALJ's errors are compounded by the Appeals Council's failure to remand the matter to the ALJ for consideration of new evidence. (Docket No. 16 at ECF p. 34). While Bunch's case was pending review by the Appeals Council, Bunch submitted records from Marshall Medical Center, marked as Exhibit 14F. (Docket No. 13-2 at ECF p. 5). The four pages of records included a one-page authorization to disclose medical records, which Bunch signed on January 27, 2015, while the case was pending with the Appeals Council. (Docket No. 13-9 at ECF p. 44). The next three pages consistent of a treatment note from Dr. William Koble, dated November 21, 2013—after Plaintiff attended the October 17, 2013 hearing and after the thirty-day window the ALJ left to supplement the record with additional evidence. (Docket No. 13-2 at ECF p. 30; Docket No. 13-9 at ECF pp. 45-47). The Appeals Council denied Bunch's request for review and stated:

> In looking at your case, we considered the additional evidence listed on the enclosed Order of Appeals Council. We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record. We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

(Docket No. 13-2 at ECF p. 2). This Court's ability to review the Appeals Council's decision in the instant case is dependent on the grounds on which the Council declined to grant plenary review. If the Council determined Bunch's newly submitted evidence was, for whatever reason, not new and material, and therefore deemed the evidence "non-qualifying under the regulation," that decision can be review for legal error. *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012). However, if the Appeals Council deemed the evidence new, material, and time-relevant but denied plenary review of the ALJ's decision based on its conclusion that the

record—as supplemented—does not demonstrate that the ALJ's decision was "contrary to the weight of the evidence," then the Council's decision not to engage in plenary review is "discretionary and unreviewable." *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997).

Therefore, first we must determine whether the Appeals Council's decision is reviewable. The Seventh Circuit has addressed numerous instances where the Appeals Council has used the exact language cited above in rejecting consideration of new evidence. They have explained that in analyzing the language:

> [T]his text, which often appears in orders of the Appeals Council rejecting plenary review, is not as clear as it might be. On the one hand, it might indicate that the Appeals Council found the proffered new evidence to be immaterial, but on the other hand it might indicate that the Council accepted the evidence as material but found it insufficient to require a different result.

*Farrell v. Astrue*, 692 F.3d 767 (7th Cir. 2012). Without more specific language from the Council, such as evidence that the Council expressly evaluated the additional evidence submitted by the claimant, the Seventh Circuit has previously interpreted a general denial notice to imply that the Council rejected the new evidence as non-qualifying under the regulation. *Compare Perkins v. Chater*, 1995 WL 579540, at *2 (N.D. Ill. Sept. 28, 1995) (holding Appeals Council reviewed additional evidence as "new and material," as evidenced by express analysis of the evidence within the Notice of Appeals Council Action) *with Farrell v. Astrue*, 692 F.3d 767 (generic language in the denial notice requires assuming that the Council rejected the new evidence as non-qualifying under the regulation, which is reviewable). We therefore proceed to the narrow question of whether the Council had erroneously concluded that the newly submitted evidence was not new and material. *Farrell v. Astrue*, 692 F.3d 767.

Given this conclusion, this Court reviews the Appeals Council's determination that the evidence did not qualify as "new and material" under 20 C.F.R. § 404.970(b), *Farrell*, 692 F.3d. at 771, and conclude that this determination did amount to legal error.

"New" evidence is evidence "not in existence or available to the claimant at the time of the administrative proceeding." *Id.* These records are "new" because they were "not in existence or available to the claimant at the time of the administrative proceeding." *Perkins*, 107 F.3d at 1296 (citation and internal quotation marks omitted). Dr. Koble's treatment notes—dated November 21, 2013 were created subsequent to Bunch's October 17, 2011 hearing and only shortly before the ALJ issued her unfavorable benefits decision on December 6, 2013. The Commissioner tries to argue that the evidence is not "new" because it was available after the hearing, but before the ALJ issued her decision. As discussed above, the ALJ left the record open for new medical evidence for only thirty days after the hearing—a period which had closed before Dr. Koble's evidence was available. Moreover, the Commissioner's conclusion is contrary to case law. *See Stepp v. Colvin*, 795 F.3d 711 (7th Cir. 2015) (Court found evidence new when it was available after hearing but before ALJ's decision).

Evidence is material if it brings a reasonable probability the evidence would have changed the ALJ's opinion. *See Sample*, 999 F.2d 1138, 1144 (7th Cir. 1993). Dr. Koble's additional records may well be material; among other findings, Dr. Koble recommended a four-point cane as he concluded that Bunch was at a high risk for falling without an assistive device, which may have an impact on the ALJ's RFC determination. (Docket No. 13-9 at ECF p. 46). The Commissioner argues that this does not have a reasonable probability of impacting the ALJ's decision because Bunch offered similar testimony at the hearing, and the ALJ was aware of her reported difficulties balancing and walking. (Docket No. 19 at ECF p. 32). However, the ALJ also found that the

23

claimant's statements were not entirely credible because they were inconsistent with the medical opinions—so it is reasonable to conclude that this new medical evidence will impact the ALJ's decision.

In sum, the Court finds that the evidence was both new and material, and therefore recommends that the ALJ re-evaluate Bunch's RFC in light of the information presented in Dr. Koble's notes on remand. Bunch's suggestion that the Court may remand the case for further consideration under sentence six of 42 U.S.C. § 405(g), which permits remand in situations where "there is new evidence which is material and . . . there is good cause for the failure to incorporate such evidence into the record in a prior proceeding" is not persuasive here. Evidence that has been submitted to and rejected by the Appeals Council does not qualify as "new" within the meaning of § 405(g). *See Farrell*, 692 F.3d. at 770. Since whether evidence is "new" within § 405(g) does not use the same analysis as whether evidence is "new" before the Appeals Council, a section six remand is not appropriate.

## Conclusion

For all these reasons, the Magistrate Judge recommends that the Court grant Plaintiff's brief in support of appeal (Docket No. 16) and that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 20th day of December, 2016.

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

24

Served electronically on all ECF-registered counsel of record.